UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANTHONY AIKENS,

       Plaintiff,

   -v-

C.O. PORTER, DSP AWOPETU, THOMAS STICHT, and A. RODRIGUEZ,

       Defendants.
_____

**DECISION AND ORDER**
16-CV-949S

## I.    INTRODUCTION

Presently before this Court is an Amended Complaint and Motion for Leave to Proceed *In Forma Pauperis* filed by *pro se* Plaintiff Anthony Aikens, who is a prisoner confined at the Attica Correctional Facility. (Docket Nos. 2 and 3.) Because Plaintiff meets the statutory requirements of 28 U.S.C. § 1915 (a), his request to proceed *in forma pauperis* will be granted. The granting of this status triggers the screening provisions in 28 U.S.C. §§ 1915 (e)(2)(B) and 1915A. Also before the Court is Plaintiff's Motion for a Temporary Restraining Order. (Docket No. 4.) For the reasons discussed below, Plaintiff's claims will proceed to service, but his request for a temporary restraining order will be denied.

## II.    FACTS

Plaintiff alleges that on January 11, 2016, at 3:30 p.m., Defendant Porter directed him to retrieve the "disposition ticket" from his cell that explained why Plaintiff had lost recreation privileges. (Amended Complaint, p. 2.) Plaintiff retrieved the "ticket" and proceeded to the Corrections Officers' desk, where he informed Defendant Porter that he

had a question to ask. (*Id.*) Defendant Porter refused to let Plaintiff ask his question and instead said, "You don't ask questions here. I do the asking here." (*Id.*)

Plaintiff then asked to speak to a sergeant. (*Id.*) In response, Defendant Porter called in a disturbance. (*Id.*) He then ordered Plaintiff against the wall and searched him. (*Id.*) After the search, Defendant Porter punched Plaintiff "in his lower spine and right side while Plaintiff was on the wall." (*Id.*) Plaintiff then fell to the floor screaming, at which time officers responding to the disturbance call arrived and took Plaintiff to the Special Housing Unit ("SHU"). (*Id.* at 3.)

In the SHU, Plaintiff asked to be seen in the medical unit, because he was experiencing "severe pain in his lower back and knumbness [sic] in both legs." (*Id.*) His request was denied and he was threatened with being stripped and placed naked on suicide watch, presumably if he did not stop asking to go to the medical unit.[1] (*Id.*)

Plaintiff filed a grievance concerning the assault on January 14, 2016, which the Superintendent denied on February 1, 2016. (*Id.* at p. 22.) Plaintiff then appealed the denial of his grievance on February 25, 2016, but has not received a decision. (*Id.* at 3.) Plaintiff therefore alleges that he has exhausted his administrative remedies. (*Id.* at pp. 3-6.)

This incident also resulted in a Tier III disciplinary hearing on January 15, 2016, at which the hearing officer, Defendant Awopetu, asked Plaintiff whether he had witnesses. (*Id.* at pp. 6, 10.) Plaintiff stated that he had no witnesses at that time. (*Id.* p. 6) He then proceeded to present his case, arguing that Defendant Porter assaulted him and

---

[1] These allegations suggest an Eighth Amendment deliberate-indifference-to-medical-needs claim, but Plaintiff neither asserts such a claim nor names as a defendant any individual who could be found to be personally involved in any such deprivation.

aggravated a preexisting injury such that he could not sleep. (*Id.*) Plaintiff also presented medical documents concerning his preexisting injury. (*Id.*) At the conclusion of Plaintiff's presentation, Defendant Awopetu stated that he needed to adjourn the proceeding so that he could hear from the officer who wrote the "ticket." (*Id.*)

The hearing continued on January 26, 2016. (*Id.* at 10.) At that time, Plaintiff advised Defendant Awopetu that he now wanted to call witnesses, but did not know their names, only their locations. (*Id.* at pp. 6, 7.) Defendant Awopetu refused to allow Plaintiff to call his witnesses, because he did not want to further delay the hearing. (*Id.*) At the conclusion of the hearing that day, Defendant Awopetu found Plaintiff guilty of one of the four charges against him and sentenced him to, *inter alia*, 180 days in the SHU, with 80 days deferred.[2] (*Id.* at 10.)

Plaintiff appealed Defendant Awopetu's decision the same day it was rendered. (*Id.* at 19.) On February 1, 2016, Defendant Sticht denied Plaintiff's appeal. (*Id.* at 22.) Plaintiff further appealed to the Commissioner, who, through Defendant Rodriguez, modified Plaintiff's sentence (reducing SHU to 90 days) but otherwise denied the appeal. (*Id.* at 21.)

### III. DISCUSSION

Under 28 U.S.C. §§ 1915 (e)(2)(B) and 1915A (a), the Court is required to conduct an initial screening of this Amended Complaint. In evaluating the Amended Complaint, the Court must accept as true all of the factual allegations and must draw all inferences

---

[2] Plaintiff's exhibits show that Defendant Awopetu found him not guilty of creating a disturbance, not guilty of interference with an employee, and not guilty of harassment, but guilty of refusing a direct order. (Amended Complaint, p. 18). "[T]he court may consider facts set forth in exhibits attached as part of the complaint as well as those in the formal complaint itself." *Chance v. Armstrong*, 143 F.3d 698, 698 n.1 (2d Cir. 1998); *see Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference").

3

in Plaintiff's favor.  *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  While "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even *pro se* pleadings must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure.  *Wynder v. McMahon*, 360 F.3d 73 (2d Cir. 2004).

To comply with Rule 8, "[s]pecific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks and citation omitted); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) (discussing pleading standard in *pro se* cases after *Twombly*: "even after *Twombly*, dismissal of a pro se claim as insufficiently pleaded is appropriate only in the most unsustainable of cases.").

Plaintiff brings this action under 42 U.S.C. § 1983.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

1. **Retaliation Claim**

Prison officials may not retaliate against prisoners for exercising their constitutional rights.  *See Franco v. Kelly*, 854 F.2d 584, 588-91 (2d Cir. 1988). A prisoner asserting a retaliation claim must demonstrate that he engaged in constitutionally protected activity,

and that retaliation against the protected conduct was a substantial or motivating factor in the defendant taking adverse action against the prisoner. *See Mount Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S. Ct. 568, 576, 50 L. Ed. 2d 471 (1977); *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Of note, the Second Circuit has cautioned district courts to view prisoners' retaliation claims with "skepticism and particular care," because of the ease and frequency with which they are fabricated. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983); *Arce v. Walker*, 58 F.Supp.2d 39, 46 (W.D.N.Y. 1999). Such skepticism is warranted, "because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001).

Here, Plaintiff has sufficiently alleged a retaliation claim through his allegations that Defendant Porter called in a disturbance and physically assaulted him after he requested to speak to a sergeant, presumably to lodge a grievance against or report misconduct by Defendant Porter. (Amended Complaint, pp. 2, 3.) This claim may therefore proceed to service.

**2. Excessive Force Claim**

The Eighth Amendment "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter*, 501 U.S. 294, 297, 11 S. Ct. 2321, 2323, 115 L. Ed. 2d 271 (1991); U.S. Const. amend. VIII. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well being."

*Helling v. McKinney*, 509 U.S. 25, 32, 113 S. Ct. 2475, 125 L. Ed. 2d 22 (1993) (quotation and citation omitted).  Part of the state's duty is to protect inmates from punishments that are "totally without penological justification."  *See Williams v. Fitzpatrick*, No. 03 CV 11, 2006 WL 1889964, at *2 (D.Vt. July 10, 2006) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981)).

To succeed on an Eighth Amendment excessive force claim, a plaintiff must establish two components: "(1) subjectively, that the defendant acted wantonly and in bad faith, and (2) objectively, that the defendant's actions violated 'contemporary standards of decency.'"  *Flynn v. Ward*, 9:15-CV-1028, 2016 WL 1357737, at *8 (N.D.N.Y. Apr. 5, 2016) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262-63 (2d Cir. 1999)).

To meet the subjective prong, "the inmate must show that the prison officials involved 'had a wanton state of mind when they engaged in the misconduct.'"  *See Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (quoting *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994)).  For excessive force claims under the Eighth Amendment, the test for wantonness "is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003).  Factors to be considered are "the extent of the injury and the mental state of the defendant, as well as the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Id. (citation omitted).

To meet the objective prong, the alleged violation must be sufficiently serious by objective standards, those being contemporary standards of decency.  *Farmer*, 511 U.S.

6

at 834; *Blyden*, 186 F.3d at 263. Although the "*de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), "the malicious use of force to cause harm constitutes an Eighth Amendment violation per se because in such an instance 'contemporary standards of decency are always violated,'" *Ward*, 2016 WL 1357737, at *8 (quoting *Blyden*, 186 F.3d at 263).

The Second Circuit has explained an excessive force claim as follows:

> The malicious use of force to cause harm constitutes an Eighth Amendment violation per se whether or not significant injury is evident. This result follows because when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. Nevertheless, a *de minimis* use of force will rarely suffice to state a constitutional claim. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.

*Griffin*, 193 F.3d at 91 (citations and internal quotations omitted).

Thus, the objective prong may be satisfied without a showing of a serious or significant injury, as long as the amount of force used is not *de minimis*. *See United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999). At bottom, the key inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (2009)(citation omitted); *see also Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L. Ed. 2d 995 (2010) (per curiam) (describing this inquiry as "the core judicial inquiry"). In other words, the key consideration is the nature of the force rather than the extent of the injury. *See Wilkins*, 559 U.S. at 34.

Here, Plaintiff has sufficiently alleged an excessive force claim through his allegations that Defendant Porter, without cause or provocation, physically assaulted and

injured him after he requested to speak to a sergeant. (Amended Complaint, pp. 2, 3.) Plaintiff alleges that Defendant Porter punched him "in his lower spine and right side," which resulted in "severe pain in his lower back and knumbness [sic] in both legs." (*Id.*) These allegations sufficiently state an Eighth Amendment excessive force claim. This claim may therefore proceed to service.

### 3. Due Process Claim

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." U.S. CONST. amend. XIV. There are two broad categories of due process claims—substantive and procedural. A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest. *See B.D. v. DeBuono*, 130 F. Supp.2d 401, 431 (S.D.N.Y. 2000). A procedural due process claim is based upon the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. *Id.* at 432-33. With respect to any due process claim—substantive or procedural—"[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trs. of Conn. State Univ.*, 850 F.2d 70, 72 (2d Cir. 1988).

Thus, to establish a due process violation, an inmate must prove that defendants interfered with his protected liberty interests by satisfying a two-part test: "(1) the confinement or restraint must create an 'atypical and significant hardship in relation to the ordinary incidents of prison life,' *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); and (2) the state must have granted a liberty interest by statute

or regulation to be free from that confinement or restraint." *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996) (citing *Sandin*, 515 U.S. at 484).

In *Wolff v. McDonnell*, the Supreme Court held that whenever an inmate is subjected to a prison disciplinary proceeding that might result in the deprivation of a liberty interest, prison officials must ensure that certain procedural safeguards are in place. 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). These safeguards include the following protections: "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Smith v. Fischer*, 803 F.3d 124, 127 (2d Cir. 2015) (per curiam) (quoting *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004)); *see also Wolff*, 418 U.S. at 563-71.

Here, Plaintiff sufficiently alleges due process claims. He alleges that he was subjected to a prison disciplinary proceeding, that he was not permitted to call witnesses during that proceeding, that he was subjected to SHU confinement, and that the conditions of his SHU confinement resulted in his inability to sleep or receive proper medical care. (Amended Complaint, pp. 6-11.) The due process claims may therefore proceed to service.

### 4. Request for Temporary Restraining Order

Plaintiff has moved for a temporary restraining order pursuant to Fed. R. Civ. P. 65. (Docket No. 4.)

> The court may issue a temporary restraining order without written or oral notice to the adverse party . . . only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing

9

        any efforts made to give notice and the reasons why it should
        not be required.

Fed R. Civ. P. 65 (b)(1).

Where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, a district court should not grant injunctive relief "unless the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim." *Andino v. Fischer*, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008); *see also Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir.1996).

Plaintiff does not meet these exacting standards. In support of his request for injunctive relief, Plaintiff alleges in conclusory fashion that he is being retaliated against by unidentified individuals for bringing this and other legal actions and for filing grievances. (Docket No. 4, p. 1.) He claims that he is being harassed, that his legal mail is being "tampered with, held or thrown away," that his cell is repeatedly searched, and that he is being denied access to courts. (*Id.*) These allegations establish neither irreparable injury nor a likelihood of success on the merits. Accordingly, Plaintiff's motion for a temporary restraining order is denied.

## IV.    CONCLUSION

Because Plaintiff has met the statutory requirements of 28 U.S.C. § 1915 (a) and filed an Authorization, his request to proceed *in forma pauperis* is granted. For the reasons set forth above, Plaintiff's claims may proceed to service, but his request for a temporary restraining order is denied.

## V.    ORDERS

IT HEREBY IS ORDERED, that Plaintiff's Motion to proceed *in forma pauperis* (Docket No. 2) is GRANTED.

FURTHER, that Plaintiff's request for a temporary restraining order (Docket No. 4) is DENIED.

FURTHER, that the Clerk of Court is directed to cause the United States Marshal Service to serve the Summons, Amended Complaint, and this Decision and Order on Defendants without Plaintiff's payment therefor, unpaid fees to be recoverable if this action terminates by monetary award in Plaintiff's favor.

FURTHER, that pursuant to 42 U.S.C. § 1997e (g)(2), the Defendants are directed to answer or move against the Amended Complaint.

FURTHER, that the Clerk of Court is directed to forward a copy of this Decision and Order by email to Michael Russo, Assistant Attorney General in Charge, Buffalo Regional Office <Michael.Russo@ag.ny.gov>.

SO ORDERED.

/s/William M. Skretny
William M. Skretny
United States District Judge

DATED: January 11, 2018
Buffalo, NY