UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY AIKENS,

              Plaintiff,
v.                                          **DECISION AND ORDER**
                                                                 16-CV-949S
C.O. PORTER, DSP A. WOPETO,
THOMAS STICHT, and A. RODRIGUEZ,

              Defendants.

## I. INTRODUCTION

In this action, pro se plaintiff Anthony Aikens alleges, pursuant to 42 U.S.C. § 1983, that the defendants, all of whom are employees of the New York Department of Corrections and Community Services ("DOCCS"), violated his constitutional rights while he was an inmate at the Wyoming Correctional Facility.[1] Specifically, Aikens claims that Defendant Correction Officer Mark Porter violated his Eighth and Fourteenth Amendment rights by subjecting him to excessive force and retaliating against him, and that Defendants Deputy Superintendent of Programs Akinyemi Awopetu,[2] Superintendent Thomas Sticht, and Acting Director of Special Housing Units Anthony Rodriguez violated his Fourteenth Amendment rights by denying him due process in a disciplinary hearing.

Presently before this Court is a motion to dismiss Aikens's Fourteenth Amendment Due Process claim brought by Defendants Awopetu, Sticht, and Rodriguez ("the moving

---

[1] Aikens is now confined in the Attica Correctional Facility. (Docket No. 3, p. 1.)

[2] Defendant Awopetu is misidentified as DSP A. Wopeto in the caption and original complaint. (Docket No. 1.)

1

defendants") under Rule 12 (b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.[3]  (Docket No. 13.)  For the following reasons, the moving defendants' motion is granted.

## II. BACKGROUND

The following facts, drawn from Aikens's amended complaint and the exhibits attached thereto,[4] are assumed true for purposes of the moving defendants' motion to dismiss.

On January 11, 2016, at approximately 3:30 p.m., Defendant Porter punched Aikens in the back and right side during an encounter in Aikens's cell block.  (Amended Complaint, Docket No. 3, p. 2.)  Immediately thereafter, officers responding to the disturbance took Aikens to the Special Housing Unit ("SHU"), where Aikens asked to be seen in the medical unit for "severe pain in his lower back and knumbness [sic] in both legs."  (Id. p. 3.)  According to Aikens, Defendant Porter's assault injured him and exacerbated pre-existing injuries in his neck and back.  (Id. pp. 3, 6, 9, 12.)

Once in the SHU, Aikens "was seen by medical."  (Id. p. 9.)  Aikens requested his TENS pain unit right away, but the medical staff instead elected to treat him with Motrin

---

3 Also pending is Aikens's "Motion Not to Dismiss the Amended Complaint."  (Docket No. 16.)  This "motion" requests no relief beyond denying the motion to dismiss and is therefore simply considered part of Aikens's opposition to the moving defendants' motion.  (Docket Nos. 16, 17.)

4 When determining the sufficiency of a plaintiff's claim for Rule 12 (b)(6) purposes, courts may consider the factual allegations in the plaintiff's complaint, documents attached to the complaint as an exhibit or incorporated in it by reference, matters of which judicial notice may be taken, or documents that were either in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.  Brass v. Am. Firm Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993); see also Cortec Ind., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991).  If the documents referenced in the complaint contradict the facts and inferences alleged by the plaintiff, the documents control and the court need not accept as true the plaintiff's allegations.  See Feick v. Fleener, 653 F.2d 69, 75 n.4 (2d Cir. 1981); United States ex rel. Sommer v. Dixon, 524 F. Supp. 83, 85 (N.D.N.Y. 1981).

and Tylenol. (Id.) Aikens maintains that he continued to be in "severe pain" and unable to sleep while in SHU until his TENS unit was provided on January 15, 2016. (Id.) Aikens alleges that his pain and inability to sleep were caused by Defendant Porter's assault on him. (Id. pp. 9, 12, 13.)

Aikens's encounter with Defendant Porter resulted in a Tier III disciplinary hearing on January 15, 2016. (Id. pp. 6, 10.) Defendant Awopetu presided over the hearing, during which he asked Aikens whether he would be calling any witnesses. (Id. p. 6.) Aikens declined to call witnesses, and he told Defendant Awopetu that he had not been able to sleep because of Defendant Porter's assault on him and the aggravation of his pre-existing injuries. (Id.) After hearing from Aikens, Defendant Awopetu adjourned the hearing to January 26, 2016, so that he could speak to the officer who wrote Aikens's "ticket." (Id.)

When the hearing resumed on January 26, 2016, Aikens advised Defendant Awopetu that he now wanted to present witnesses, but knew only their locations, not their names. (Id. pp. 6, 7.) Defendant Awopetu told Aikens that he would not delay the hearing any further to allow him to find and call his witnesses. (Id. pp. 6, 7.) At the conclusion of the hearing, Defendant Awopetu found Aikens guilty of refusing a direct order and imposed discipline of, among other things, 180 days in SHU, with 80 days suspended. (Id. pp. 10, 18.)

Aikens appealed Defendant Awopetu's findings to Defendant Sticht, who denied the appeal. (Id. pp. 10, 16, 19.) Aikens then appealed to Defendant Rodriguez, who reduced Aikens's SHU sentence to 90 days, but otherwise denied his appeal. (Id. pp.

10, 21.)

### III. DISCUSSION

Cognizant of the distinct disadvantage that pro se litigants face, federal courts routinely read their submissions liberally and interpret them to raise the strongest arguments that they suggest. See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Since Aikens is proceeding pro se, this Court has considered his submissions and arguments accordingly.

Aikens's claim against the moving defendants is that they violated his Fourteenth Amendment right to due process when Defendant Awopetu denied him the opportunity to present witnesses during his disciplinary hearing and Defendants Sticht and Rodriguez upheld that decision. The moving defendants seek dismissal of this claim under Rule 12 (b)(6) on the basis that Aikens fails to allege a liberty interest protected by the Fourteenth Amendment, as required.

### A. General Legal Principles

#### 1. Rule 12 (b)(6)

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

4

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Legal conclusions, however, are not afforded the same presumption of truthfulness. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 1950; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

A two-pronged approach is thus used to examine the sufficiency of a complaint, which includes "any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits." Blue Tree Hotels Inv. (Can.), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). This examination is context specific and requires that the court draw on its judicial experience

5

and common sense.  See Iqbal, 556 U.S. at 679.  First, statements that are not entitled to the presumption of truth, such as conclusory allegations, labels, and legal conclusions, are identified and stripped away.  See id.  Second, well-pleaded, non-conclusory factual allegations are presumed true and examined to determine whether they "plausibly give rise to an entitlement to relief."  Id.  "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint fails to state a claim.  Id.

For pro se actions, the United States Supreme Court has rejected the notion that the plausibility standard requires amplification with factual allegations to render the claim plausible.  See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).  In Erickson, the Supreme Court reversed the dismissal of a prisoner's Eighth Amendment claim, holding that the court of appeals had "depart[ed] from the liberal pleading standards" of Rule 8 (a).  Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson, 551 U.S. at 94).  Although the Court did not clarify when the plausibility standard requires factual amplification, it noted that "a pro se complaint however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson, 551 U.S. at 94 (quoting Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)).

### 2. Section 1983 and Personal Involvement

Aikens brings his Fourteenth Amendment claim under 42 U.S.C. § 1983.  Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and

laws.  See 42 U.S.C. § 1983.  To succeed on a § 1983 claim, a plaintiff must establish that the challenged conduct "(1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  Whalen v. County of Fulton, 126 F.3d 400, 405 (2d Cir. 1997); see also Hubbard v. J.C. Penney Dep't Store, 05-CV-6042, 2005 WL 1490304, at *1 (W.D.N.Y. June 14, 2005).

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999).  It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates."  Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Personal involvement need not be active participation.  It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act."  See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

7

> (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

**B.     Aikens's Fourteenth Amendment Claim: Liberty Interest in SHU Confinement**

The Fourteenth Amendment provides, in pertinent part, that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV.

There are two broad categories of due process claims—substantive and procedural. A substantive due process claim is based upon the deprivation of a constitutionally protected life, liberty, or property interest. See B.D. v. DeBuono, 130 F. Supp. 2d 401, 431 (S.D.N.Y. 2000). A procedural due process claim is based upon the deprivation of a protected life, liberty, or property interest, without notice and an opportunity to be heard. Id. at 432-33. With respect to either type of due process claim "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).

To state a procedural due process claim arising out of a prison disciplinary hearing, a plaintiff must allege that he or she (1) possessed a liberty interest, and (2) was deprived of that interest without being afforded sufficient process. See Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004); Tellier v. Fields, 280 F.3d 69, 79-80 (2d Cir. 2000).

"A prisoner's liberty interest is implicated by prison discipline, such as [special housing unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Such discipline must be unusually onerous. See Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999).

Two primary factors inform this determination: the conditions and duration of confinement. See J.S. v. T'Kach, 714 F.3d 99, 106 (2d Cir. 2013); Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009) (quoting Sandin, 515 U.S. at 484) ("Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'"). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." Sealey v. Giltner, 197 F.3d 578, 586 (2d Cir. 1999) (citations omitted).

As to the conditions of confinement, they are to be considered "in comparison to the hardships endured by prisoners in general population, as well as prisoners in

9

administrative and protective confinement, assuming such confinements are imposed in the ordinary course of prison administration." Davis v. Barrett, 576 F.3d 129, 134 (2d Cir. 2009).

As to the duration of confinement, the Second Circuit has avoided setting bright-line rules, see Palmer, 364 F.3d at 65, but it has offered some guidance: First, confinement of longer than 305 days under normal SHU conditions is "a sufficient departure from the ordinary incidents of prison life to require procedural due process protections under Sandin." Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000). Second, confinement of an intermediate duration—between 101 and 305 days—requires "development of a detailed record" to assess the conditions of the confinement relative to ordinary prison conditions. Id. at 232. For this period, the court must "make a fact-intensive inquiry, examining the actual circumstances of SHU confinement in the case before it without relying on its familiarity with SHU conditions in previous cases." Palmer, 364 F.3d at 65 (quotations and internal citations omitted). Only when the particular SHU conditions are undisputed can the court resolve the issue short of trial. See id. Third, confinement of less than 101 days could constitute an "atypical and significant hardship" if the conditions are more severe than normal SHU conditions, though typically such confinement under normal SHU conditions will not give rise to due process rights. See id.; Palmer v. Goss, No. 02 Civ. 5804 (HB), 2003 WL 22327110, at *6 (S.D.N.Y. Oct. 10, 2003) (noting that courts in the Second Circuit "generally require that the duration of confinement be at least 100 days" to constitute an "atypical and significant hardship.") And finally, claims involving confinement of less than 30 days under normal SHU

conditions may be subject to dismissal without development of a detailed record. See Palmer, 364 F.3d at 65.

Thus, when the duration of confinement alone does not give rise to due process rights (i.e., confinement of less than 305 days), courts must also examine the conditions of confinement to determine whether the confinement as a whole meets the "atypical and significant hardship" standard. See, e.g., Bacon v. Phelps, No. 9:15-CV-1502 (DNH/CFH), 2018 WL 4178221, at *6 (N.D.N.Y. July 31, 2018) ("Thus, the length of plaintiff's SHU confinement alone does not set forth a constitutional violation. Assessment of the conditions of confinement is necessary to determine whether plaintiff had a protected liberty interest.")

Here, Aikens's 90-day SHU sentence itself does not give rise to a liberty interest. Nor, however, do his conditions of confinement. Although Aikens attempts to attribute his pain and inability to sleep to his confinement, see Amended Complaint, p. 11, the allegations in his complaint make clear that those conditions were actually caused by the assault:

> "Plaintiff then stated to Defendant [Awopetu] that he has *not been able to sleep because of the assault on him* when he was punch[ed] in his lower spine and side by C.O. Porter [a]nd his pre-existing injury was reinjured and *this cause[d] plaintiff severe pain* to the point that it deprive[d] plaintiff of sleep during confinement." (Amended Complaint, p. 6 (emphasis added).)
>
> "Plaintiff informed medical that he was in severe pain for an assault that *happened to him before being place[d] in SHU*." (Id. p. 9 (emphasis added).)
>
> ". . . because of the severe pain he has not been able to sleep period." (Id.)

11

> "Plaintiff was deprived of sleep *because the assault* on 1/11/16 by Defendant C.O. Porter exacerbated his pre-existing injuries and cause[d] him severe pain while in SHU." (Id. p. 12 (emphasis added).)
>
> "Plaintiff's conditions in SHU being *in severe pain from assault* exacerbated his pre-existing condition making his confinement atypical and harsh. (Id. p. 13 (emphasis added.)

There is no indication whatsoever in Aikens's complaint that he was subjected to anything other than normal SHU conditions during his period of confinement. His own allegations make clear that the pain and inability to sleep he may have experienced were not caused by or attributable to his conditions of confinement, but rather, were simply experienced in SHU after being suffered in the assault. In other words, Aikens's placement in SHU had nothing to do with the pain and inability to sleep that he may have experienced there; he would have experienced those conditions no matter where he was placed after the assault. Aikens therefore fails to allege a protected liberty interest, and consequently, fails to state a Fourteenth Amendment due process claim. See Tookes v. Artuz, No. 00CIV4969, 2002 WL 1484391, at *3 (S.D.N.Y. July 11, 2001) ("inmate's confinement in special housing for 101 days or less, absent additional egregious circumstances, does not implicate a liberty interest").

### IV. CONCLUSION

For the foregoing reasons, the moving defendants' motion to dismiss Aikens's Fourteenth Amendment Due Process claim is granted. Defendants Awopetu, Sticht, and Rodriguez will be terminated as defendants in this action. Defendant Porter will have 14 days from the entry date of this decision to file an answer consistent with Rule 12

(a)(4)(A).

## V. ORDERS

IT HEREBY IS ORDERED, that the Motion to Dismiss (Docket No. 13) is GRANTED.

FURTHER, that Plaintiff's "Motion Not to Dismiss the Amended Complaint" (Docket No. 16) is DENIED.

FURTHER, that the Clerk of Court is directed to TERMINATE Defendants Awopetu, Sticht, and Rodriguez as defendants in this action.

FURTHER, that Defendant Porter shall file an answer within 14 days of the entry date of this decision consistent with Rule 12 (a)(4)(A).

SO ORDERED.

Dated:      February 8, 2019
               Buffalo, New York

                                                  /s/William M. Skretny
                                                    WILLIAM M. SKRETNY